van Gestel, J.
This matter came before the Court on a request by the plaintiff, UBS PaineWebber Incorporated (“PaineWebber”), seeking injunctive relief against the defendant, Roger W. Dowd (“Dowd”). Both parties were present and represented, filed their pleadings and argued orally. Consequently, this Court treated the matter as if it was a preliminary injunction hearing.
This Court has heard many of these kinds of cases. The pattern is similar in all cases. A stock broker, or person seeking to become a stock broker, joins a brokerage house, signs a non-solicitation agreement and also agrees to keep certain information confidential. After a period of time, the broker, often solicited by a competing brokerage, decides to leave his employing-brokerage for the competition down the street. Without prior warning, the broker resigns at the end of the day on Friday and is up and running at his new employer by Monday morning. These brokers move around with astounding frequency, and the whole industry knows it.
Indeed, shamelessly, the brokers ignore the limitations in their non-solicitation agreements and regularly take with them customer information that assists in soliciting those customers away from the brokerage the broker just left. Similarly shamelessly, thé brokerage houses often lure the brokers away from their competitors, assist in their abrupt transfer, and then attempt to solicit the former brokerage’s customers to follow. This is not a clean-hands business on any side.
What follows is a race to the Court by the jilted brokerage seeking injunctive relief, all in anticipation of industry-mandated arbitration before the NASD. It is in assessing the propriety of that relief that the Court must apply the mandate of Mass.R.Civ.P. Rule 65, and have in mind the teachings in Packaging Indus. Group, Inc. v. Cheney, 380 Mass. 609, 616-17 (1980), as they relate to likelihood of success on the merits, irreparable harm and the balancing of the equities. The Court also must be aware particularly of Appeals Court Justice Porada’s Decisions and Orders in Salomon Smith Barney, Inc. v. Wetzel, Mass.App.Ct. No. 01-J-44 (January 29, 2001 and February 2, 2001). Still further, the Court should remain cognizant of the decision in Patsos v. First Albany Corporation, 433 Mass. 323 (2001), that may relieve it from the obligation to follow the teachings in Wetzel.
The NASD arbitration that follows the hearing on the request for preliminary injunctive relief frequently results in orders purporting to terminate or dissolve injunctions and ends in monetary settlements. Being squeezed between the Wetzel decisions on the one hand and the apparent reality of NASD arbitration practice and results on the other, all in the face of the unclean hands all around, is not a position greatly appreciated by this Court.
When in the past it has entered injunctive relief the Court has attempted to be careful to protect the interests of the customers and to insure that only improper solicitation or use of truly confidential information is prohibited. For that reason, it has included in its orders variations of the following language:
provided that this injunctive relief does not preclude [the departing broker or his new employer] or their agents from servicing any client or account who or which [the departing broker or his new employer] can prove has followed him to his new employer out of choice and not as a result of solicitation by him (such proof depending in great part upon the nature of the communication between [the departing broker or his new employer] and the former [brokerage’s] customer or account, with a simple announcement that [the departing broker] has left [the former brokerage] to join [his new employer] being acceptable, and a communication asking the client or account to follow [the departing broker to his new employer], accompanied by a “signature-ready” account transfer form and postage pre-paid return envelope, seen as improper solicitation), nor still further does it allow [the former brokerage] to deny, impede or obstruct a request made by a client for the transfer of any account to [the departing broker’s] new employer;
*213 In order to prevail on its request for preliminary injunctive relief, PaineWebber bears the burden of showing: its likelihood of success on the merits; that it will suffer irreparable harm if the injunctive relief sought is not granted; and that its harm, without the injunction, outweighs any harm to Dowd from being enjoined. GTE Products Corp. v. Stewart, 414 Mass. 721, 722-23 (1993); Packaging Indus. Group, Inc. v. Cheney, 380 Mass. 609, 616-17 (1980). Further, the Court ought to determine whether the granting of a preliminary injunction will promote or adversely affect the public interest. Commonwealth v. Mass. CRINC, 392 Mass. 443, 447 (1983); Biotti v. Board of Selectmen of Manchester, 25 Mass.App.Ct. 637, 640 (1988).
PaineWebber grounds its request for an injunction on three affidavits: principally that of Maxwell Bardeen (“Bardeen”), its Boston Branch Office Manager, and to a much lesser extent, those of Michael Cotter (“Cotter”) and Anthony Schena (“Schena”), each brokers in the Boston office. Dowd opposes the injunction with an affidavit of his own and an affidavit by one of his attorneys, Deborah J. Swedlow.
In considering the several affidavits, this Court has applied the test included in Mass. R.Civ.P. Rule 56(e), which seems particularly apt when what the plaintiff seeks is an order that is enforceable by contempt penalties. Rule 56(e) provides: “Supporting and opposing affidavits shall be made on personal knowledge, shall set forth such facts as would be admissible in evidence, and shall show affirmatively that the affiant is competent to testify on the matters stated therein.” (Emphasis added.) See, e.g., Madsen v. Erwin, 395 Mass. 715, 719 (1985).
Bardeen’s affidavit, in the key paragraphs relating to confidential information and customer solicitation (paras. 11, 12 and 13), begins consecutively with the words: “Information has come to my attention that . . .”; “It has come to my attention that. . .”; and, “On information and belief ...” The sources, nature, reliability or timing of any of that information are not stated and what follows each introductory phrase is conclusory and without detail.
Cotter and Schena, in their affidavits, each claim to have had telephone conversations with single separate former PaineWebber customers who supposedly informed them that they had been contacted by telephone by Dowd “soliciting” them to transfer their account to Morgan Stanley. The words used by the customers were not stated by Cotter or Schena, and no affidavits of the customers themselves were filed. Thus, the Court cannot tell whether these calls were truly solicitations or Cotter and Schena merely interpreted them to be such.
Dowd, who does not bear any burden of proof at this time, in his affidavit (para. 9) said, among other things:
I never communicated my decision to leave Paine Webber to join Morgan Stanley with my clients prior to my resignation. Moreover, I have not solicited my clients. I have neither sent my clients any mass mailing, nor any communication, such as a “signature ready” account transfer form, asking clients to follow me to Morgan Stanley. After resigning, I merely mailed out simple announcement cards to my clients. This standard wedding-style announcement was sent only to clients that I had personally serviced at Paine Webber (an example of which is attached to this affidavit as Exhibit A).
The announcement attached as Exhibit A reads in its entirety as follows:
We are pleased to announce that Roger W Dowd Financial Advisor has joined Mogan Stanley one of the nation’s oldest and most respected financial services firms.
Morgan Stanley
3 Copley Place, Suite 100
Boston, MA 02116
(617) 578-9389
(888) 357-5481
(617) 578-9555 Fax
Morgan Stanley is a service mark of Morgan Stanley Dean Witter & Co. Services are offered through Morgan Stanley DW Inc., member SIPC
The card quoted above is an announcement, not a solicitation.
Additionally, attached to the Swedlow affidavit is a copy of a document entitled “PaineWebber — Customer Privacy Policy." Included in that policy are the following statements:
The personal information we collect about you [our customers] includes:
information you provide us on applications and other forms (such as your name, address, social security number, occupation, assets, and income);
information about your transactions with us, our affiliates and others; and/or
information we receive from consumer reporting agencies (such as your credit history and creditworthieness) and other entities not affiliated with UBS PaineWebber.
We may share the personal information described above for business purposes with the following companies not affiliated with us:
Financial services institutions (such as mutual fund companies, securities brokers, clearing brokers and banks) with whom we have joint marketing agreements (such as agreements to market financial services or products that we jointly offer, endorse or sponsor) . . .
*214 It would appear that the kind of customer information described above does not fit within the reach of the plain meaning of the words “confidential information of Paine Webber” as those words are used in the agreement in issue.
On the record presently before this Court, it cannot be found that PaineWebber has demonstrated a likelihood of success on the merits regarding improper solicitation by Dowd or that he has taken confidential customer information. For that reason, the entry of a preliminary injunction would be inappropriate. Consequently, PaineWebber’s request for preliminary injunctive relief pending NASD arbitration is DENIED.
ALL FURTHER PROCEEDINGS IN THIS CASE ARE HEREBY STAYED PENDING ARBITRATION BEFORE AN APPROPRIATE TRIBUNAL OF THE NASD.