van Gestel, J.
This matter came before the Court on a request by the plaintiff, Salomon Smith Barney, Inc. (“SSB”), seeking a preliminary injunction against the defendant, David Barcomb (“Barcomb”). Both parties were present, filed their pleadings and argued orally.
This Court has heard many of these kinds of cases. In exercising its general equity powers when applying Mass.R.Civ.P. Rule 65, the Court has, as it must, applied the teachings in Packaging Indus. Group, Inc. v. Cheney, 380 Mass. 609, 616-17 (1980), particularly as they relate to likelihood of success on the merits, irreparable harm and balance of equities. In so doing, the Court has felt uncomfortably constrained by the Decisions and Orders in Salomon Smith Barney, Inc. v. Wetzel Mass.App.Ct. No. 01-J-44 (January 29, 2001 and February 2, 2001). See, e.g., this Court’s decision in UBS PaineWebber, Incorporated v. Dowd, Suffolk Superior Court Civil Action No. 01-5402BLS, 14 Mass. L. Rptr. 212, 2001 WL 1772856, (Nov. 29, 2001).
The litigational relationships among members of the National Association of Securities Dealers (“NASD”) is regulated by industry-compelled arbitration. Parties to such arbitration, like SSB and Barcomb here, may, nevertheless, seek preliminary injunctive relief from a court of competent jurisdiction in support of that'arbitration. That is what is occurring here.
Barcomb has a non-solicitation and confidential information protection agreement with SSB. It is the customers of SSB, served by Barcomb, and those customers’ records that are the targets of the injunctive relief sought. On Friday, December 6, 2002, late in the afternoon, Barcomb quit his job atSSB’s Boston office and first thing on Monday morning, December 9, 2002, started his employment with the UBS PaineWebber, Inc. (“PaineWebber”) office in Boston. His change in employment has, in part at least, been made known by him to some of his former SSB customers, and those customers have been provided with the necessary forms to change their accounts to follow Barcomb to PaineWebber.
There have now been sufficient changes in the approach of the NASD to these kinds of cases since the Wetzel decisions which, to this Court, make Wetzel no longer controlling.
Effective on December 21, 2001, the NASD announced new Rule 2110-7. That Rule reads in its entirety as follows:
It shall be inconsistent with just and equitable principles of trade for a member or person associated with a member to interfere with a customer’s request to transfer his or her account in connection with the change in employment of the customer’s registered representative, provided that the account is not subject to any lien for monies owed by the customer or other bona fide claim. Prohibited interference includes, but is not limited to, seeking a judicial order or decree that would bar or restrict the submission, delivery or acceptance of a written request from a customer to transfer his or her account. Nothing in this interpretation shall affect the operation of Rule 11870.
In February 2002 the NASD issued Notice to Members 02-13. In so doing, the NASD explained that it had approved amendments to Rule 10335 of the NASD Code of Arbitration Procedure (“Code”). This is the Rule that governs intra-industry disputes like that before this Court here. The effective date of these amendments was March 25, 2002. Under these amendments, temporary injunctive relief by the NASD is no longer available. The right of parties to seek such relief in a court of competent jurisdiction, however, remains an option. If a court issues temporary injunctive relief, the NASD then will conduct an expedited hearing.
*482 Still further, this Court has been provided with copies of two decisions on hearings under the amended Rule 10335: Merrill Lynch Pierce Fenner & Smith, Incorporated v. Stark, et al., Case #02-05187, heard on September 19, 2002, and Merrill Lynch Pierce Fenner & Smith Incorporated v. Sherman, et al., Case #02-05989, heard on October 23, 2002.
In the Stark case, the arbitration panel denied the claimant’s request for injunctive relief. The basis for the denial was the rights of customers. The panel said,
Customer rights are of primaiy importance and [the panel] is concerned customers are, or may be, subject to harm due to this dispute. The fiduciary duties owed by the parties to the customers are superior to any duties owed by employees to the former employer. The customers have a paramount right to be advised of the move by their broker and, that this right includes receiving personal contact from their broker. The customers have the right to be informed that they decide whether to remain with Merrill Lynch or to transfer their account. Customer names and addresses and telephone numbers are not confidential.
In the Sherman case, the arbitration panel again denied the claimant’s request for an injunction and noted, “The TRO is hereby dissolved effective November 5, 2002.”
Returning to Packaging Indus. Group, Inc., supra, 380 Mass. at 616-17, and the issues of likelihood of success on the merits, irreparable harm and balance of equities, this Court concludes that SSB has not met its burden of showing a likelihood of success on the merits of injunctive relief before an NASD arbitration panel. Nor, at least in this case where the limitation in Barcomb’s agreement is for only six months, has SSB shown that its damages, if any, cannot be measured accurately in dollars and, thus, there is no irreparable harm. Still further, this Court, like the NASD, is concerned that the customers — who are wholly innocent in this shuffle of their representative from one brokerage house to another — may well be subject to harm from any restraint issued in this case.
ORDER
For the foregoing reasons the application of Salomon Smith Barney Inc. for preliminary injunctive relief from this Court is DENIED.
ALL FURTHER PROCEEDINGS IN THIS CASE ARE HEREBY STAYED PENDING ARBITRATION BEFORE AN APPROPRIATE TRIBUNAL OF THE NASD.