Agnes, A.J.
This matter came before the Court on May 25, 2004, on the plaintiff, Merrill Lynch, Pierce, Fenner & Smith, Inc.’s (Merrill Lynch) request for injunctive relief against its former employee, the defendant Morgan Dewey (Dewey). Dewey was employed as a financial consultant in Merrill Lynch’s branch office, in Worcester, Massachusetts, until he tendered his resignation on May 21, 2004. “By definition, a preliminary injunction must be granted or denied after an abbreviated presentation of the facts and the law.” Packaging Industries Group, Inc. v. Cheney, 380 Mass. 609, 616 (1980). The findings of fact below are based on a hearing conducted on May 25, 2004. For the following reasons, Merrill Lynch’s motion for a preliminary injunction is allowed in part and denied in part.[1]
FINDINGS OF FACT
Dewey serviced hundreds of Merrill Lynch accounts representing over $128 million in assets under management. In addition, it is estimated that his work over the last twelve months generated over $498,000 in commission revenue for Merrill Lynch. On May 21, 2004, Dewey resigned from his position at Merrill Lynch and immediately commenced work with Morgan Stanley DW, Inc., a competitor of Merrill Lynch. Prior to or simultaneously with his departure from Merrill Lynch, Dewey mailed announcements to his Merrill Lynch clients, notifying them of his departure and future employment at Morgan Stanley.
In his affidavit, Dewey asserts that he brought many of his clients with him to Merrill Lynch from his former employer. Furthermore, his largest client is a family member and a significant portion of his client base is comprised of family members and personal friends.
According to one of the plaintiffs affidavits, Dewey took his laptop with him when he left Merrill Lynch. The laptop contained a database of the names, addresses and telephone numbers of Merrill Lynch clients. The database is known as “Act!.”
According to the privacy policy which Dewey signed, Merrill Lynch guarantees to its customers that their names, addresses and other information will remain confidential and will not be disclosed to others outside of Merrill Lynch. In addition, the policy states that third-party service providers with access to client information are also subject to the Merrill Lynch privacy policy. Furthermore, the conflict of interest agreement Dewey signed states that he is not to “use or disclose to another any confidential information or business secrets relating to Merrill Lynch” before or after his employment.
Additionally, Dewey signed Merrill Lynch’s “Guidelines for Business Conduct” which provides in part that “Merrill Lynch’s assets include . . . its . . . client lists” and that such assets can be used “only for the purposes intended and not for their personal benefit.”
There is no indication that Dewey signed a non-compete or non-solicitation agreement.
CONCLUSIONS OF LAW
In deciding whether to grant a preliminary injunction, the court must determine whether the moving party has demonstrated a likelihood of success on the merits and whether it faces a substantial risk of irreparable hairni.e., a loss of rights not capable of remediation by a final judgment in law or equity should the moving party prevail after a full hearing on the meritsif the motion for the preliminary injunction is not granted. Packaging Industries Group, Inc. v. Cheney, 380 Mass. 609, 616-17 & n.11 (1980). If the moving party has met this burden, the court must then engage in a balancing test in which the irreparable harm faced by the moving party is compared to the harm that an injunction would inflict on the other party. “Only where the balance between these risks cuts in favor of the moving party may a preliminary injunction properly issue.” Id. The stronger the case is on the merits, the less is required to be shown in terms of irreparable harm. See Gately v. Commonwealth, 2 F.3d 1221, 1224-25 (1st Cir. 1993). Furthermore, in an appropriate case, “the risk of harm to the public interest also may be considered.” Brookline v. Goldstein, 388 Mass. 443, 447 (1983). See also LeClair v. Town of Norwell, 430 Mass. 328, 337 (1999); Commonwealth v. Mass. CRINC, 392 Mass. 79, 89 (1984).
Injunctive relief is warranted to prevent misappropriation and unlawful use of confidential records such as the customers’ names and addresses in circum *50 stances in which the former employee and employer entered into a contract that restricts the former employee’s use of such material following his employment. Marine Contractors Co., Inc. v. Hurley, 365 Mass. 280, 288-89 (1974).
I.Success on the Merits
Merrill Lynch has presented a strong case at this stage of the proceedings that its client list is proprietary and confidential information.[2] In addition, there is evidence that Dewey retained a copy of the customer list upon his departure from Merrill Lynch.
Dewey argues, citing USB Paine Webber, Inc. v. Dowd, that the clients’ information is not confidential or private because Merrill Lynch’s “Global Privacy Pledge” indicates such information may be transmitted to nonaffiliated third parties for a variety of purposes. See USB Paine Webber v. Dowd, Civil Action No. 01-5402 (BLS) (Suffolk Super. Ct. Nov. 29, 2001) (van Gestel, J.), 14 Mass. L. Rptr. 212, 2001 WL 1772856 (Mass. Super), U.S. App. LEXIS 1498. In USB Paine Webber, where this court declined to recognize Paine Webber’s customer list as confidential, the firm’s privacy policy informed prospective customers that their information might be shared with third parties; however, it did not indicate that third parties were under any obligation to keep such information private or confidential. Here, Merrill Lynch’s privacy policy states that third parties have an obligation to maintain the confidentiality of clients’ names and information. Given the proprietary nature of the database, Merrill Lynch’s privacy policy and the various nondisclosure agreements, Dewey’s retention of the database and the customer information it contains appears to be a violation of his duiy not to improperly disclose or exploit confidential information belonging to Merrill Lynch.
Although there is no evidence that Dewey signed either a non-compete agreement or a non-solicitation agreement, Merrill Lynch argues that solicitation of its customers is a form of disclosure and therefore violates the nondisclosure agreements. There is no indication that Massachusetts courts have ever interpreted nondisclosure agreements so broadly. As a result, this court is reluctant to do so. First, a ' solicitation does not necessarily disclose confidential information. A significant portion of Dewey’s clients at Merrill Lynch came with him from a previous firm and are personally known to him as a result of familial or other personal relationships. Furthermore, it is well established that Dewey has the right to use his general knowledge, experience, memoiy and skill after leaving employment. See, e.g., J.T. Healy & Son, Inc. v. James A. Murphy & Son, Inc., 357 Mass. 728, 740 (1970). Second, such an expansion would equate nondisclosure agreements with non-solicitation agreements and render the latter obsolete. Nondisclosure agreements and non-solicitation agreements are distinct. To equate the two is fundamentally unfair to an employee who is not put on notice of what obligations may apply upon termination of employment. Salomon Smith Barney v. Stubbs, Civil Action No. 00-4142 (Suffolk Super. Ct. Nov. 7, 2000) (Gants, J.). In the case at hand, Merrill Lynch could have sought a non-solicitation agreement with Dewey in addition to a nondisclosure agreement. In the absence of such an agreement, this court declines to apply a nondisclosure agreement so broadly.
II.Irreparable Harm
Merrill Lynch argues that it will suffer a loss of goodwill among its clients if Dewey is permitted to use and retain its confidential client information. Further, Massachusetts courts have held that the loss of a company’s goodwill results in irreparable harm and is appropriately protected by an injunction. Kroeger v. Stop & Shop Cos., Inc., 13 Mass.App.Ct. 310, 316 (1982). The goodwill at issue here is the potential loss of client trust and confidence as a result of Dewey’s possession and possible use of Merrill Lynch’s proprietary and confidential information. Given the various agreements Dewey signed not to disclose the confidential information of its employer and the difficulty in assessing a value to the loss of goodwill, a preliminary injunction is an appropriate means of preventing any future irreparable harm to Merrill Lynch.
III.Balancing the Potential Harms
An order to return Merrill Lynch’s database containing confidential client information does not impose any significant restraints on Dewey. Dewey is not enjoined from competing with Merrill Lynch or pursuing any potential clients, including those he retains a memoiy of from prior employment. Equitable enforcement of Dewey’s nondisclosure agreement simply means that he cannot use the proprietary and confidential information of Merrill Lynch in his new capaciiy at a competing firm. Accordingly, the balance of harms weighs in favor of Merrill Lynch and a preliminary injunction shall be granted.

This matter was disposed of on an expedited basis in view of the parties’ need for clarification of their responsibilities. This written decision simply memorializes the court’s reasons for the orders previously entered on May 25, 2004. On that day the court entered the following order: After a hearing based on abbreviated findings of fact, the defendant is ordered and enjoined from copying Merrill Lynch’s clients list and shall return the same to plaintiff within 24 hours. A $500.00 bond is to be posted by the plaintiff. The defendant is not ordered to refrain from any solicitation of his former Merrill Lynch customers. A somewhat more detailed version of the same order was entered thereafter based on drafts submitted by the parties.

Because the parties consented by written agreement to maintain the confidentiality of Merrill Lynch customers, it is not necessary for the court to conduct a multi-part analysis to determine trade secret status as set out in Jet Spray Cooler v. Crompton, 361 Mass. 835 (1998).